IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

John M. Kelly, et al.,

          Plaintiff,

v.

Re/Max Int'l., Inc., et al.,

          Defendant.

Case No. 3:06CV1966

ORDER

      This is a diversity case in which the plaintiffs, John M. Kelly and Pamela R. Winnick, claim that the defendants Re/Max International, Inc. [Re/Max] and Re/Max Masters [Masters] intentionally interfered with a residential real estate purchase contract between plaintiffs and a prospective purchaser. Plaintiffs also allege intentional infliction of emotional distress.

      Pending is the defendants' motion for summary judgment. Also pending is a motion by the plaintiffs for sanctions under Fed. R. Civ. P. 11. Jurisdiction exists under 28 U.S.C. § 1332.

      For reasons that follow, defendants' motion for summary judgment shall be granted and plaintiffs' motion for sanctions shall be denied.

**Background**

      Plaintiffs live in Pittsburgh, Pennsylvania. They formerly lived in Toledo, Ohio, where they owned a condominium since 1999. They placed the condo on the market in early 2000. It remained

unsold for six years. For most of that period, plaintiffs were paying about $1,300/ month for the mortgage and monthly condo fees.

On April 17, 2006, William C. Fox, through Masters agent Michael Hayden, submitted a signed "Residential Real Estate Purchase Agreement" [purchase agreement] offering to buy the condo for $78,000. On April 20, 2006, Kelly responded with an oral counteroffer of $86,450. Later that day Fox made an oral counteroffer of $81,000. Kelly orally accepted this offer on April 21, 2006**.** Kelly interlineated the purchase agreement to reflect the change in price from $78,000 to $81,000, signed it, and returned it to Hayden for Fox to sign.

Before signing the interlineated purchase agreement with the price of $81,000, Fox learned that the monthly condo fees would be $56 more per month than stated on the multi-listing advertisement. Hayden told Kelly about the problem. Hayden also refrained from initialing the purchase agreement.

On April 28, 2006, Tom Kabat, plaintiffs' realtor, e-mailed Hayden offering to reduce the purchase price by $672 to cover the increased monthly fees for one year. Fox decided not to buy the condominium.

### DISCUSSION

#### 1. Intentional Interference With Contractual Relations

The Ohio Supreme Court set forth the elements of intentional interference with a contract in *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419 (1995), stating that plaintiff must prove: 1) existence of a contract; 2) knowledge on the part of the defendant of the contract; 3) the defendant's intentional procurement of the contract's breach; 4) lack of justification on the defendant's part; and 5) resulting damages.

To satisfy the first element, the plaintiff must prove that there was a legally enforceable contract between the parties. *Id*. Acceptance of an offer is necessary to create a binding contract. *Noroski v. Fallet*, 2 Ohio St.3d 77, 79 (1982). An outward manifestation of assent to the offer by the offeree constitutes acceptance. *McSweeney v. Jackson*, 117 Ohio App.3d 623, 631 (1996).

Ohio's Statute of Frauds, O.R.C § 1335.04, requires that contracts for the sale of real estate in Ohio, to be binding and enforceable, must be in writing: "[N]o lease, estate, or interest . . . in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing."

The oral agreement between the parties to sell the condo for $81,000 was not enforceable due to the Statute of Frauds.

Plaintiffs claim that the Statute was satisfied because it was interlineated with the orally-agreed to purchase price. This, however, merely created a unilateral written counteroffer that could not become binding until counter-signed by either Fox or Hayden acting as Fox's agent. Indeed, the purchase agreement clearly states that, "All changes to original offer and/or this printed agreement must be initialed and should be dated by the seller and purchaser."

Ohio courts have made clear that any changes in the material terms of a real estate purchase contract must be initialed jointly by the parties to create a binding contract. *See, e.g.*, *Gatliff v. Pickering*, 1978 WL 215835, at *2 (Ohio App.). In this case neither Hayden nor Fox initialed the purchase agreement after plaintiffs had altered the price to reflect the parties' oral agreement. Fox's signature on the purchase agreement only manifests his assent to the original offer of $78,000; that signature was not, as a matter of law, carried forward to reflect his assent to the orally agreed-on

3

price of $81,000. Therefore, a contract was never created between the parties, even though both parties' signatures appear on the purchase agreement. [1]

Kelly's proposal, after Re/Max declined to assent to the $81,000 price, to reduce the purchase price of the condo to cover additional condo fees was merely another counteroffer. The language of the email conveying this counteroffer makes this clear: "She [co-plaintiff Winnick] *is offering* to reduce the price of the condo by $672 to cover 12 months of the increase." (Emphasis supplied).

No contract ever existed between the parties. Therefore, Re/Max's motion for summary judgment shall be granted as to Kelly's claim for intentional interference with a contract.

## 2. Intentional Infliction of Emotional Distress

In Ohio, to succeed on a claim of intentional infliction of emotional distress a plaintiff must prove that: 1) the defendant intended to cause the plaintiff serious emotional distress; 2) his or her conduct was extreme and outrageous; and, 3) the conduct proximately caused serious emotional distress to the plaintiff. *Phung v. Waste Management, Inc.*, 71 Ohio St.3d 408, 410 (1994).

Defendants assert that plaintiffs cannot show "extreme and outrageous conduct" on their part. In response, plaintiffs point to the alleged "outrageousness of [defendants'] conduct in ignoring a binding contract" as evidence of this element.

In *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-75 (1983), the Ohio Supreme Court stated, with regard to what constitutes extreme and outrageous conduct, that "[i]t has not been

---

[1] In *Gatliff, supra*, the court declined to analyze the contract under the Statute of Frauds because the court held that a contract never existed, written or not, therefore it was unnecessary to determine if the contract satisfied the Statute of Frauds.1978 WL 215835, at *2. The same could be done here, however, since both parties' signatures do appear on the revised purchase agreement, the court finds it necessary to address the issue.

enough that the defendant has acted with an intent which is tortious . . . criminal . . . or . . . has intended to inflict emotional distress." A claim of intentional infliction of emotional distress lies only where "the conduct [is] so outrageous in character, and so extreme in degree . . . to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.

The defendants' conduct in this case did not rise to the "extreme and outrageous." There is no evidence that the defendants' interaction with the plaintiffs was anything other than an arms-length business negotiation. There is nothing illegal, much less "extreme and outrageous," about backing out of an unenforceable oral agreement. *Cf. Provident Bank v. Adriatic, Inc.*, 2005 WL 2840741, at *2 (Ohio App.).[2] For the same reason, the punitive damages sought by plaintiffs will not be awarded in this case.

### 3. Rule 11 Sanctions

Plaintiffs allege that attorney James D. Caruso violated Fed. R. Civ. P. 11(b) by knowingly presenting the wrong version of the contract in question to the court and not informing the court that Fox is a biased witness since Fox is being sued by plaintiffs in a separate case.

Rule 11(b) states: "By presenting to the court a pleading, written motion, or other paper, an attorney . . . is certifying . . . the presentation is not being offered for any improper purpose,

---

[2] Plaintiffs have not, in any event, presented a genuine issue of material fact that they suffered a "serious mental injury." Plaintiffs' own words describe their mental injuries by discussing a "painful period of . . . life" and their "angst." Such displeasure is far from the "severe and debilitating" emotional distress required by the Ohio Supreme Court. *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983). It also does not appear from the record that plaintiffs sought professional help in order to cope with their mental pain. While seeking professional help is not required to prove a claim for intentional infliction of emotional distress, some evidence to support such claim is necessary. *Grote v. J.S. Mayer & Co.*, 570 N.E.2d 1146, 1150 (1990).

the claims are warranted, the allegations have evidentiary support, and the denials of factual contentions are warranted."

Neither of these actions was improper. The correct contract is before the court. That Fox might be antagonistic to the plaintiffs is readily apparent from the facts of the case, in which plaintiffs claim that, though he is not a party to this suit, he acted wrongfully when he [quite lawfully] declined to sign a binding contract to purchase their condominium.

## Conclusion

It is therefore,

ORDERED THAT:

1. Re/Max's motion for summary judgment be, and the same hereby is granted; and

2. Plaintiff's motion for sanctions be, and the same hereby is denied.

So ordered.

                                                s/James G. Carr
                                                James G. Carr
                                                Chief Judge